## BITUMINOUS CASUALTY CORPORATION, Appellant,

### v.

## AETNA LIFE AND CASUALTY COMPANY, Respondent.

### No. 41879.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 6, 1980.

---

Joseph H. Mueller, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for respondent.

GUNN, Presiding Judge.

This case presents a dispute between two insurance companies as to which should bear the loss of personal injury arising from an accident involving their respective insureds. Plaintiff-appellant Bituminous Casualty Corporation (Bituminous) settled the personal injury claim of an injured party after defendant-respondent Aetna Life and Casualty Corporation (Aetna) refused to defend a suit brought upon the claim. Bituminous then brought this action against Aetna for indemnification contending that Aetna's policy covered the loss. From an adverse decision of the trial court finding no policy coverage, Bituminous appeals. For the reasons which follow, we reverse and remand.

The facts are essentially undisputed but a bit complicated. Bituminous' insured, Metro Disposal Systems, owned a landfill site on which it maintained a bulldozer. The bulldozer was operated by Metro's employee, Lilburn Kitcherside. The injured party, Andrew Yates, was employed by Aetna's insured, ABC Roofing Company. A truck owned by ABC Roofing and attended by Yates became enmired while attempting to disgorge a load of refuse at Metro Disposal's landfill. Kitcherside was asked to assist in extricating the vehicle by pushing it with the bulldozer. In the pushing process—the record is not clear whether the bulldozer was disengaged from the truck— Yates was struck by the bulldozer blade and injured. Bituminous settled Yates' claim under its policy covering Metro Disposal Systems following Aetna's refusal to defend Yates' personal injury action. This proceeding followed.

Bituminous' theory of recovery is that Kitcherside—Metro's bulldozer operator— became an insured under Aetna's policy covering ABC Roofing when he "used" ABC's truck by pushing it. Thus—so theorizes Bituminous—Aetna shared in the liability for Yates' injury.

Gray & Ritter, Robert F. Ritter, Thomas C. De Voto, St. Louis, for appellant.

The omnibus clause of Aetna's policy covered ABC Roofing for liability occasioned by "any person while using the [insured] automobile and any person or organization legally responsible for the use thereof, provided the actual use is by the named insured or . . . spouse or with the permission of either."

The second provision of the policy involved here is the employee exclusion clause which purports to exclude coverage for any "bodily injury to or sickness, disease or death of any employee of the insured" arising in the course of the employee's employment by the name insured.

The third and most critical provision of the policy is the "severability clause":

The term "the insured" is used severally and not collectively, that the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

The threshold question is whether Kitcherside, in assisting the ABC Roofing truck, became an omnibus insured under ABC's policy in the first instance. If his assistance in pushing the truck constitutes "use" of the truck with ABC's permission, Kitcherside would fall within its terms.

■ In our review, we first encounter the basic precept that omnibus provisions are to be read and construed to broaden policy coverage. *Weathers v. Royal Indemnity Co.,* 577 S.W.2d 623 (Mo. banc 1979); *Truck Ins. Exchange v. Hunt,* 590 S.W.2d 425 (Mo.App.1979). Particularly apt, is the following language in *Cameron Mutual Ins. Co. v. Ward,* 599 S.W.2d 13, 15 (Mo. App.1980), citing and quoting from *Schmidt v. Utilities Ins. Co.,* 353 Mo. 213, 218–19, 182 S.W.2d 181, 183–84 (1944):

*Schmidt,* premised upon the basic rule that insuring agreements which are susceptible of various interpretations are to be liberally construed in favor of the insured, holds that the "words 'arising out of * * * use' are very broad, general and comprehensive terms . . . [and

the] words 'arising out of' . . . are ordinarily understood to mean 'originating from' or 'having its origin in,' 'growing out of' or 'flowing from'. . . ."

Missouri courts recognize that the term "use" in an omnibus clause imports more than the actual driving of or riding in a vehicle. *See, e. g.: Allstate Insurance Co. v. Hartford Accident & Indemnity Co.,* 486 S.W.2d 38, 43 and ff. (Mo.App.1972).

[M]any decisions have in effect recognized *use* as going beyond the narrow meaning of the direct mechanical operation performed by the driver and as encompassing the broader concept of employing or putting the vehicle into one's service by an act which assumes at any time—with the consent of the owner or his agent—the supervisory control or guidance of its movements.

*Waltz v. Cameron Mutual Ins. Co.,* 526 S.W.2d 340, 344 (Mo.App.1975), quoting from *Woodrich Construction Co. v. Indemnity Ins. Co.,* 252 Minn. 86, 89 N.W.2d 412, 418 (1958).

■ Extricating the immobilized truck by impelling it forward with the bulldozer is such an act as "assumes . . . supervisory control or guidance of its movements" and constitutes "use" of the truck within the intendment of the omnibus provision. This conclusion is supported by the reasoning of other courts that have had occasion to consider similar issues. *See, e. g.: Wiebel v. American Farmers Mutual Insurance Co.,* 1 Storey 151, 51 Del. 151, 140 A.2d 712 (Del.Super.1958); *Union Mutual Fire Insurance Co. v. King,* 113 N.H. 39, 300 A.2d 335 (1973); *Dairyland Insurance Co. v. Drum,* 568 P.2d 459 (Colo. banc 1977).

■ Aetna seeks to distinguish the present case from the above authorities on the basis that there was some evidence at trial indicating that contact between the bulldozer blade and truck had ceased as the blade was being lowered at the time Yates was struck.[1] Therefore, Aetna argues, Kitcherside was not "using" the truck at the time of the injury, citing *Wiebel v.*

1. As previously noted, the record does not reflect whether the two vehicles had disengaged.

*American Farmers Mutual Insurance Co.*; *Poe v. Sheeley,* 19 Wash.App. 833, 578 P.2d 63 (1978), and *Barth v. Milwaukee Automobile Insurance Co. Limited Mutual,* 268 Wis. 335, 67 N.W.2d 272 (1954). These authorities, however, do not support Aetna's argument that Kitcherside's omnibus coverage ceases the instant that contact between the two vehicles is broken. *Poe* and *Barth* merely hold that a Good Samaritan is not liable as a joint tortfeasor for injuries subsequently caused by a vehicle he has assisted where he no longer shares in any control over the vehicle. *Wiebel,* which Bituminous also cites, holds that the Samaritan's omnibus coverage does not extend to the disabled vehicle where he ceases pushing that vehicle with his own, instead assisting by pushing the vehicle by hand at the time the injury occurred. Conversely, *Wiebel* also holds that under the same circumstances the Samaritan *is* covered by the disabled vehicle's omnibus clause by virtue of the "use" language—exactly the situation presented here. The crucial factor in determining whether coverage exists by virtue of "use" is not some hypertechnical concept of actual physical contact at the precise moment of injury. The pivotal criterion is, rather, whether the putative omnibus insured exercised a sufficient degree of control over the injuring instrumentality so as to have had some proximate causal responsibility for the accident:

> Automobile insurance contracts protect against liability for accidents arising out of the "use" of vehicle [sic] but they cannot be held to protect against liability for accidents *where the use of the automobile was not connected with the accident or the creation of a condition that caused the accident* . . ..
> In the case at bar the use of the Wiebel automobile to push the Scherff automobile in a reverse position out of the driveway had been completed or abandoned *prior to any acts that might be found to be a proximate cause of the accident.* (emphasis supplied)

*Wiebel v. American Farmers Mutual Insurance Co.,* 140 A.2d at 714.

As stated in *Cameron Mutual Ins. Co. v. Ward*:

> [A]lthough it is not required that the "use" of the automobile be the "direct and proximate" cause of the injury in the strict legal sense of causation permeating general tort law, there must be some causal connection between an injury and the "use" of an automobile in order for there to be coverage.

In this case, Kitcherside's "use" of the ABC Roofing truck by pushing it free was directly responsible for "the creation of a condition that caused the accident," i. e., the bulldozer moving forward in Yates' direction behind the truck. Similarly, the bulldozer had not yet come to rest at the termination of the pushing transaction, which cannot be said to have been "completed" or "abandoned" prior to the acts that were the proximate cause of the accident. The record indicates that neither vehicle moved more than a "few" feet. The injured party testified that the vehicles were both moving at the time he was struck, and there was no evidence to the contrary:

> Q. Are you saying, that while you were down at the bottom by the truck, that the bulldozer came up and gave the truck a shove, and the blade hit you?
> A. [Yates] The truck was just moving. He was right on it and dropped his blade.
> Q. The bulldozer, and the truck were still moving, and the blade came into contact?
> A. Right.

The injury thus occurred in the course of the pushing transaction which constituted "use" of the ABC Roofing truck for purposes of the omnibus clause.

■ The remaining issue is the effect of the severability clause upon the employee exclusion provision. The authorities are not in agreement as to the effect of similar employee exclusions under circumstances such as are presented here.[2] But it is clear

---

**2.** Some jurisdictions apply the employee exclusion only where the injured party seeks to

impose liability upon his insured employer and would allow coverage where an employee of

in Missouri that the employee exclusion standing alone would have the effect of excluding all coverage as to an injured employee of ABC Roofing. *Simpson v. American Automobile Insurance Co.*, 327 S.W.2d 519 (Mo.App.1959). The question of the effect of the severability clause on that exclusion, however, is of first impression in Missouri. We conclude that the employee exclusion is limited in its operation by the severability clause to cases in which an injured employee seeks to impose liability upon his insured employer. As he was not Yates' employer, Kitcherside's omnibus coverage under Aetna's policy was not negated by the employee exclusion.

The apparent intent and effect of the severability clause is to provide "each insured with separate coverage, as if each were separately insured with a distinct policy, subject to the liability limits of the policy." *United States Fidelity & Guaranty Co. v. Globe Indemnity Co.*, 60 Ill.2d 295, 327 N.E.2d 321, 323 (1975). If the policy is viewed as a separate and "distinct" policy as to Kitcherside, who had no employment relationship with the injured party, the employee exclusion is wholly extraneous and inapplicable.

The rationale for this result was first stated in *General Aviation Supply Co. v. Insurance Co. of North America*, 181 F.Supp. 380, 384 (E.D.Mo.1960), and still remains valid:

> The logical theory for the employee exclusion is to prevent employees of the tort feasor from suing his employer for injuries received thru his employer's negligence. A reason for this is that employees are usually covered by workmen's compensation and can recover from the employer, with or without negligence. When negligence is committed by other than his employer, the logic for the exclusion disappears. If the insurer wishes to further exclude its liability, it could clear-

ly so state in its contract and its failure to do so should be strictly construed. Especially is this true when the policy contains a severability clause, for there it can be implied that the insurer is actually recognizing a separate obligation to others, distinct and apart from the obligation it owes to the named insured.

Our ruling here is also consistent with the trend of the later state cases. *See: Zenti v. The Home Insurance Co.; United States Fidelity & Guaranty Co. v. Globe Indemnity Co.; Commercial Standard Insurance Co. v. American General Insurance Co.*, 455 S.W.2d 714 (Tex.1970), overruling *Transport Insurance Co. v. Standard Oil Co. of Texas*, 161 Tex. 93, 337 S.W.2d 284 (1960).

Aetna cites certain federal cases as authority for the opposite result. The principal proponent of the narrower interpretation of the severability of interest clause has been the United States Sixth Circuit. That court, however, has mechanically applied the employee exclusion irrespective of the severability clause more on the strength of the principle of *stare decisis* than on case-by-case constructions of policy provisions. *See, e. g.*, the cursory treatment of the issue in *Maryland Casualty Co. v. American Fidelity & Casualty Co.*, 330 F.2d 526 (6th Cir. 1964), in which the district court expressed the opinion that the view we adopt today was the better one but nevertheless ruled otherwise, citing the constraints of *stare decisis*.[3] This continuing application by the Sixth Circuit of the restrictive reading of the severability clause solely on the strength of *stare decisis* is particularly unfortunate because the principal case and wellspring of authority on the issue in that circuit is *Kelly v. State Automobile Insurance Association*, 288 F.2d 734 (6th Cir. 1961). *Kelly* itself relies primarily upon *Transport Insurance Company v. Standard Oil Co.* as its authority, which as noted above was specifically overruled by

one insured is suing an *additional* insured, not his employer. See authorities collected in *Zenti v. Home Insurance Co.*, 262 N.W.2d 588, 590 (Iowa 1978).

3. *Maryland Casualty Co. v. American Fidelity & Casualty Co.*, 217 F.Supp. 688 (E.D.Tenn. 1963).

the Texas Supreme Court in *Commercial Standard Insurance Co. v. American General Insurance Co.* Despite the fact that the state authority on which the Sixth Circuit line of cases was founded has thus since been undermined, it continues an essentially rote application of *Kelly.*

We are aware that in *Maryland Casualty Co. v. Fidelity & Casualty Co. of New York*, 313 F.Supp. 560, 564 (W.D.Mo.1970), the Western District held otherwise, apparently based on an erroneous assumption as to Missouri law:

> [I]n respect of Missouri jurisprudence, the case law is contrary to the rule advocated by plaintiff and holds that a "severability of interest" clause does not operate to extend coverage to claims for injuries to the named insured's employee[,]

citing *Hanover Ins. Co. Mass. Bond Dept. v. Travelers Indemnity Co.*, 210 F.Supp. 765 (E.D.Mo.1962), as authority for this proposition. *Hanover*, however, contains no such statement and, in fact, explicitly (and correctly) recognizes that "there are no Missouri appellate court decisions on the severability of interest clause." *Id.* at 767–8. The *Hanover* court instead chose to follow the *Kelly* case, based, as noted above, on a subsequently overruled Texas decision.

We hold that the severability of interest clause in essence creates a distinct policy and coverage as to Kitcherside, which would have been effective throughout the "use" transaction and which limits the application of the employee exclusion to situations where an employer-insured may be liable for injuries to an employee.

The judgment is reversed and remanded.

STEPHAN and PUDLOWSKI, JJ., concur.