**SHELTER MUTUAL INSURANCE CO., Respondent,**

v.

**Mary HALLER, Administrator,**

and

**Billy Vollrath, Guardian, Appellants.**

**No. WD 42570.**

Missouri Court of Appeals,
Western District.

May 22, 1990.

As Modified July 26, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 1990.

Richard Blank, Boonville, for Mary Haller.

Daniel K. Atwill, Maria Campbell (argued), Columbia, for Billy Vollrath.

Duane E. Schreimann, Donald C. Otto (argued), Jefferson City, for Shelter Mut.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

NUGENT, Chief Judge.

In consolidated appeals defendant Billy Vollrath, guardian and conservator of the minor sons of the named insureds, Glenda and Harold L. Heckman, Sr., deceased, and Mary Haller, administrator of the estate of the deceased Harold L. Heckman, appeal from the trial court's declaratory judgment that plaintiff Shelter Mutual Insurance Co.'s homeowner's policy does not cover the sons claims for their mother's wrongful death at the hands of their father. Mr. Vollrath and Ms. Haller contend first that, since no provision in the policy excludes such coverage as a matter of law, the trial court erred in declaring that Shelter need not cover the sons' claimed losses. They next maintain that the trial court's judgment contravenes Missouri's public policy.

We affirm the judgment of the trial court.

On September 5, 1987, Shelter issued a homeowner's insurance policy to Mr. and Mrs. Heckman. Basically, Shelter's policy insured the Heckman's property and protected them and their two sons, Harold L., Jr., and Lloyd W., against personal liability for injuries to others. The policy defines "Insured" as the persons to whom the plaintiff issued the policy, that is, the named insured, and their relatives and other persons under age twenty-one living in their household. The policy's coverage applies "separately to each insured against whom claim is made ..." (emphasis in the original). In addition, if a named insured dies, the policy will cover surviving members of the household while they remain residents of the insured premises, as well as the person serving as the decedent's legal representative.

The policy excludes from coverage, among other things, medical expenses arising from injuries to the named insureds, "bodily injury or property damage expected or intended by the insured," and bodily injuries to the named insured.

Mr. Vollrath, the guardian of the two sons, sued their father's estate, claiming damages for the wrongful death of their mother. Ms. Haller, the estate's adminis-

trator, then demanded that the plaintiff defend the wrongful death action.

In a separate action, Shelter petitioned the circuit court for a declaratory judgment alleging that on June 8, 1988, Mr. Heckman shot and killed his wife, from whom he had separated, and then shot and killed himself. In his answer to Shelter's declaratory judgment petition, Mr. Vollrath denied Shelter's allegations regarding the Heckmans' deaths, and in her answer, Ms. Haller denied sufficient knowledge to admit them. The court ruled on the pleadings that the insurance policy did not cover the loss the sons claimed and, thus, that the company did not have to defend the action.

■ A declaratory judgment becomes a final and appealable order when it declares, as does the judgment of the trial court here, the rights of all parties to the action with respect to all issues raised in the action. *Shelter Mut. Ins. Co. v. Kramer,* 741 S.W.2d 302, 304 (Mo.App.1987). In reviewing a declaratory judgment, an appellate court will determine "credibility, weight and value of oral testimony and other evidence in the case, and make its own determination of the facts" based upon the entire record and giving due deference to the trial court's findings. *Weber v. Missouri State Highway Comm'n,* 639 S.W.2d 825, 827 (Mo.1982).

We need not address the plaintiff's argument that defendant Vollrath has no standing to appeal the judgment because we affirm on other grounds. For the purposes of this appeal, we assume that the defendant has standing to appeal under § 512.020, Missouri Revised Statutes, 1986.

In his first point on appeal, appellants Vollrath and Haller argue that the trial court erred in entering a declaratory judgment on the pleadings because, as a matter of law, no policy provision excludes coverage of losses incurred through the wrongful death of a named insured.

The homeowners insurance policy issued to the Heckmans constitutes an adhesion contract. In *Estrin Constr. Co., Inc. v. Aetna Casualty and Sur. Co.,* 612 S.W.2d 413 (Mo.App.1981), Judge Shangler succinctly described an adhesion contract as a standardized contract allowing for no negotiations between the parties. *Id.* at 418 n. 3. Because the "assent is resembled rather than actual," the contract's printed words do not sufficiently "disclose the expectations of the parties." *Id.* at 419. Instead, a "court must look for that purpose to the full circumstances of the transaction ..." and determine whether any ambiguity exists. *Id.* "An ambiguity in a policy provision induces a construction most favorable to the insured—but does not foreclose evidence for interpretation." *Id. See also Wright v. Newman,* 598 F.Supp. 1178, 1205 (W.D.Mo.1984), *aff'd,* 767 F.2d 460 (8th Cir. 1985); *Spychalski v. MFA Life Ins. Co.,* 620 S.W.2d 388, 393 (Mo.App.1981); 3A CORBIN ON CONTRACTS, § 559A (1990 Supp.).

■ When an ambiguity exists as to the scope of an exclusion clause, courts will interpret the exclusion narrowly. *Shelter Mut. Ins. Co. v. Brooks,* 693 S.W.2d 810, 811 (Mo.1985) (en banc). In *Brooks,* the severability clause of an automobile liability policy stated that the coverage applied "separately to each insured against whom claim is made or suit is brought...." At the same time, an exclusion clause denied coverage for bodily injury to "the insured or any member of the same family of the insured residing in the same household as the insured." *Id.*

A brother of one of the named insureds borrowed the insured car and in it died from carbon monoxide poisoning. His children brought a wrongful death action against the named insured. Finding that the policy's exclusion clause contained ambiguous language allowing interpretation of the phrase "the insured" in both the singular and plural meanings, the Supreme Court resolved the ambiguity in favor of the insureds. Reversing the trial court's declaratory judgment in favor of the insurer, the court held that the severability clause had limited the exclusion of coverage to the "insured claiming coverage," meaning only an individual insured. Otherwise, it reasoned, any permittee using the car would automatically become an insured and thus could not recover for bodily inju-

ries received in the car. *Id.* at 812–13. Thus, the policy did not exclude coverage for the death of the brother, a permittee insured. *Id.*

■ Mr. Vollrath and Ms. Haller apply the same rationale in their argument that the severability clause of the Heckmans' policy, applying coverage "separately to each insured against whom claim is made ...," limits the exclusion of coverage only to "the insured claiming coverage." Under this reasoning, a named insured would not receive coverage for bodily injuries he received if he sought to recover from himself, but a named insured seeking damages for injuries inflicted by another named insured could collect from the insurer. This rationale cannot apply because if it does, as Shelter correctly argues, "the exclusion would be valid only when a named insured sues himself," an absurdity.

The facts in *Brooks* distinguish it because there, a permittee using the car of the named insured also became an insured, and thus, under the insurer's interpretation, the extent of the exclusion of coverage to an "insured," became all inclusive. Here, however, the policy named both Glenda Heckman and her husband as insureds. The exclusion of coverage for bodily injuries to "you" unambiguously referred to "the insured named in the Declarations...."

Had some member of the Heckman household sued to recover for bodily injuries, the policy's severability clause, under *Brooks, supra,* might operate to allow coverage for that "insured." In the situation before us, however, that clause cannot operate to limit the exclusion clause, as Mr. Vollrath and Ms. Haller argue it does, without completely eviscerating the exclusion clause and contravening logic. Were we to apply their argument, we would in effect create an ambiguity where none existed. That we cannot do. *Ward v. American Family Ins. Co.,* 783 S.W.2d 921, 925 (Mo.App.1989). Instead, we must apply unambiguous language as it stands. *Cameron Mut. Ins. Co. v. Proctor,* 758 S.W.2d 67, 70 (Mo.App.1988). Based upon the policy's language, neither Glenda Heckman nor her husband could have reasonably expected to collect for bodily injuries to themselves.

Appellants' second point on appeal, to wit: that denial of coverage for Ms. Heckman's wrongful death contravenes public policy, does not persuade us to change the clear meaning and intent of the Heckmans' insurance contract. As noted, courts will uphold the validity of unambiguous exclusion clauses. *Proctor, supra.*

For the forgoing reasons, we affirm the decision of the trial court.

All concur.