AMERICAN MOTORISTS INSURANCE
COMPANY, Respondent,

v.

T. Donald MOORE, Jason T. Grass,
Jacob A. Grass and Betty J.
Downey, Appellants.

No. 73871.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 23, 1998.

Mary Coffey, St. Louis, for appellants.

Jeffrey L. Cramer, Christina E. Dubis, Brown & James, St. Louis, for respondent.

HOFF, Judge.

Jason T. Grass, Jacob A. Grass, and Betty J. Downey (collectively Claimants) appeal from the judgment entered after the grant of summary judgment in favor of American Motorists Insurance Company (Insurer) in this declaratory judgment action. We affirm.

The undisputed record discloses the following: Insurer issued a homeowner's insurance policy (policy) to Lloyd Grass (Lloyd) and his wife, Sherry Grass (Sherry). During the policy period, Lloyd killed Sherry. Thereafter Claimants, who are Sherry's sons and mother, filed a wrongful death action pursuant to Section 537.080 RSMo Cum.Supp.1992 against T. Donald Moore (Moore), in his capacity as conservator of Lloyd's estate. The allegations in Claimants' Second Amended Petition for Wrongful Death reveal that Claimants seek damages for the loss of Sherry's "support, income, earnings, wages, companionship, wisdom, training, counsel, and guidance."

After Moore made a demand on Insurer that it defend and indemnify him, in his representative capacity, with respect to the wrongful death action, Insurer filed this declaratory judgment action. Through an Amended Petition for Declaratory Judgment (Amended Petition), Insurer sought a declaration that the policy provided no coverage for and Insurer had no obligation or duty to defend against the wrongful death claims. Specifically, Insurer alleged: Sherry was an insured under the policy and therefore there is no coverage due to policy Exclusion 2.f (Count I); the wrongful death claims do not allege an "occurrence" as defined in the policy (Count II); and bodily injury to Sherry

was intended or expected by Lloyd and therefore there is no coverage due to policy Exclusion 1.a (Count III).

The policy contains the following relevant provisions:

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household.... In addition, certain words and phrases are defined as follows:

1. "bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

\* \* \*

3. "Insured" means you and residents of your household who are:

    a.   your relatives; or

    b.   other persons under the age of 21 and in the care of any person named above.

\* \* \*

## SECTION II – LIABILITY COVERAGES

COVERAGE E—Personal Liability

If a claim is made or a suit is brought against an Insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1.   pay up to our limit of liability for the damages for which the Insured is legally liable; and

2.   provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

\* \* \*

## SECTION II – EXCLUSIONS

\* \* \*

2.   Coverage E – Personal Liability, does not apply to:

\* \* \*

f.   bodily injury to you or an Insured within the meaning of part a. or b. of "Insured" as defined.

\* \* \*

## SECTION II – CONDITIONS

\* \* \*

2.   Severability of Insurance. This insurance applies separately to each Insured. This condition will not increase our limit of liability for any one occurrence.

Both Lloyd and Sherry were named as insureds in the policy's Declarations.

In this declaratory judgment action, Claimants and Insurer filed motions for summary judgment directed only to Insurer's claim there was no coverage due to Exclusion 2.f and Sherry's status as an insured (Count I of the Amended Petition). In granting Insurer's motion, the trial court first determined Sherry was an insured for purposes of the policy because she was a named insured and because she was a resident of the household and a relative of the other named insured, Lloyd. The trial court then found the wrongful death claims arose out of and are derived from bodily injury to an insured and bodily injury to an insured is expressly excluded from the policy's personal liability coverage. The trial court specifically stated the policy's personal liability coverage excludes "personal liability for bodily injury" to Sherry as well as Claimants' "claims for loss of services as a result of the death" of Sherry. The trial court found the policy did not provide coverage for and does not impose either a duty or an obligation on Insurer to defend and indemnify Moore, in his representative capacity, with respect to the wrongful death claims. After the trial court's decision on the summary judgment

motions, Insurer dismissed its other pending claims.

We dismissed an earlier appeal in this case due to the absence of a judgment complying with Rule 74.01(a). *American Motorists Ins. Co. v. Moore*, 958 S.W.2d 94 (Mo.App.E.D. 1997). On January 12, 1998, the trial court filed a document denominated "Judgment," which states in full:

> Pursuant to this Court's Memorandum and Order dated 2/26/97 granting summary judgment to plaintiff on Count 1, and the plaintiff's 3/10/97 voluntary dismissal of the remaining Counts 2 and 3, judgment is hereby entered in favor of plaintiff and against defendants, at defendants' costs.

This appeal followed entry of that judgment.[1]

In their sole point, Claimants argue the trial court erred in granting summary judgment in favor of Insurer on Count I because policy Exclusion 2.f either (1) by its express terms does not apply to derivative claims, such as those presented by Claimants, or (2) is ambiguous regarding its application to derivative claims and the ambiguity must be construed in favor of coverage.

In appeals from summary judgment, we "review the record in the light most favorable to the party against whom judgment was entered" and our review is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Whether to grant summary judgment is purely an issue of law. *Id.* Because the trial court's judgment is based upon the record submitted and the law, we "need not defer to the trial court's order granting summary judgment." *Id.*

"The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute." *Id.* at 378. The record reveals there is no genuine dispute as to the material facts. Insurer, the successful movant, is entitled to judgment if it establishes a policy exclusion bars coverage. *American Family Mut. Ins. Co. v. Pacchetti*, 808 S.W.2d 369, 370 (Mo. banc 1991); *State Farm Fire and Casualty Co. v. Schroeder*, 951 S.W.2d 708, 709 (Mo.App. E.D.1997). The questions pre-

sented for our consideration are: (1) does Exclusion 2.f unambiguously preclude coverage of the wrongful death claims pursued by Claimants; and, if so, (2) does either the personal liability coverage provision or the severability clause in the policy render Exclusion 2.f ambiguous? We conclude Exclusion 2.f unambiguously precludes coverage of Claimants' wrongful death claims and neither the policy's personal liability coverage provision nor the policy's severability clause render Exclusion 2.f ambiguous.

If the insurance policy is unambiguous, we enforce the policy as written. *Peters v. Employers Mut. Casualty Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). "Plain and unambiguous language [in an insurance policy] must be given its plain meaning." *Wendorff v. Missouri State Life Ins. Co.*, 318 Mo. 363, 1 S.W.2d 99, 101 (1927). We cannot distort unambiguous policy language to create an ambiguity. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. banc 1992).

An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of a policy's language. *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. banc 1997). The language used is viewed "in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Krombach*, 827 S.W.2d at 210. Words are ambiguous if they are "reasonably open to different constructions." *Gulf Ins. Co.*, 936 S.W.2d at 814. We construe ambiguous insurance policy provisions against the insurer. *Id.*

■ In light of this Court's recent decision in *Wintlend v. Baertschi*, 963 S.W.2d 387 (Mo.App. E.D.1998), we conclude Exclusion 2.f unambiguously applies to Claimants' wrongful death claims. The *Wintlend* case focused on whether or not wrongful death claims pursued by the relatives of three insureds who had been killed by a fourth insured were covered under a homeowner's insurance policy containing language identical to the language at issue in this case. *Id.* We reversed the trial court's judgment and entered judgment in favor of the insurer upon determining the trial court's interpreta-

1. Moore is not a party to this appeal.

tion of the policy as providing coverage of the wrongful death claims failed to give effect to the "that results" language at the end of the "bodily injury" definition. *Id.* at 390. In relevant part we concluded:

A plain reading of the policy reveals it provides coverage for bodily injury *including* a loss of services *that results* from bodily harm, sickness or disease. Here, while claimants arguably suffered a loss of services, their loss will only be covered if it resulted from bodily harm, sickness or disease covered by the policy. Claimants' losses derived solely from bodily harm suffered by wife and children, who were insureds under the policy. Because the policy excluded coverage for bodily harm, sickness or disease to any insured, it follows that damages derived from the insureds' harm, whether or not they are considered separate injuries, are also excluded.

That this is the proper interpretation becomes clear when the exclusion is read substituting the definition of bodily injury for the phrase itself. Read in this way, the exclusion would state: "**Coverage E – Personal Liability,** does not apply to [bodily harm, sickness, or disease, including required care, loss of services and death that results[,]] to you or an insured . . . ." Read in a more grammatically correct fashion, the exclusion provides personal liability coverage does not apply to bodily harm, sickness or disease to an insured, including required care, loss of services and death that results from such injuries. Thus, it becomes clear claimants cannot recover for any loss of services that resulted from bodily harm to an insured. Because bodily harm, sickness or disease occurred only to insureds under the policy, all required care, loss of services and death that resulted were excluded from coverage. *See State Farm Fire and Cas. Co. v. Lewis,* 191 Cal.App.3d 960, 236 Cal.Rptr. 807, 809 (1987).

*Id.* (alterations in original). We find our interpretation of the coverage and exclusion language in the homeowner's policy addressed in *Wintlend* fully applicable to the identical coverage and exclusion language here.

Regardless of who is pursuing the claim(s) and who is seeking coverage under the policy, the significant question is: does the person who was bodily harmed, sick or diseased, resulting in required care, loss of services or death, fall within the policy's definition of "insured"? If so, then Exclusion 2.f disallows personal liability coverage for the claim(s). Because Claimants here are entitled to seek damages only because bodily injury to an insured resulted in her death, the wrongful death claims are excluded from the personal liability coverage provisions of the policy under the unambiguous terms of Exclusion 2.f.

Despite the unambiguity of its terms, Claimants urge other policy provisions render Exclusion 2.f ambiguous in excluding wrongful death claims arising from the death of an insured. In support of this argument, Claimants first compare the language used in the personal liability coverage provision, Section II Coverage E, with the language of Exclusion 2.f. Specifically, Claimants note the Coverage E provision states in relevant part that Insurer will cover an insured's liability for claims for "damages because of bodily injury," whereas Exclusion 2.f states the personal liability coverage does not apply to claims for "bodily injury." Contending that the former phrase is broader and encompasses more than the latter phrase, Claimants argue their claims do not fall within the relevant exclusion provision and are encompassed by the personal liability coverage provision. In support of this position, Claimants rely on *Cano v. Travelers Ins. Co.,* 656 S.W.2d 266, 271 (Mo. banc 1983).

The Missouri Supreme Court in *Cano* addressed, in relevant part, whether a wife may recover the $10,000 policy limit of an uninsured motorist provision for a loss of consortium judgment additional to her husband's recovery of the $10,000 policy limit of the same uninsured motorist provision for his personal injury judgment. *Id.* at 270–71. The Missouri Supreme Court found ambiguous the policy's "per person" limitation of liability provision pertaining to the uninsured

motorist coverage [2] because it was not clear whether the word "sustained" modified the word "damages" or the phrase "bodily injuries." *Id.* at 271. If the word "sustained" modified "damages," then, the Court observed, each person's damages were covered because "a person entitled to damages on account of bodily injury to another is explicitly named as an insured in the policy." *Id.* If, however, the word "sustained" modified "bodily injuries," then, the Court found, husband and wife together could not recover more than a total of $10,000, the limit of liability for uninsured motorist coverage. *Id.* The Missouri Supreme Court concluded "that there is an ambiguity which should be resolved against the insurer." *Id.*

Claimants' reliance on *Cano* as support for their position that the personal liability coverage provision here, which explicitly references "damages," is broader than Exclusion 2.f, which does not include the term "damages," is misplaced. The more expansive reading of "damages" in *Cano* was based on the insurance policy's explicit definition of "insured" as including "[a]ny person with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured." *Id.* at 268, 271. Such a definition of "insured" is not part of the homeowners' policy at issue here. Additionally, the *Cano* case focused on the structure of a sentence and the effect the word "sustained" would have on "damages" and "bodily injury"; such issues are not present here. See *Lair v. American Family Mut. Ins. Co.*, 789 S.W.2d 30, 34 (Mo. banc 1990) (*Cano* distinguished because the same grammatical arrangement was not at issue). Thus, *Cano* does not support a determination that Exclusion 2.f is ambiguous because it omits a reference to "damages," a word explicitly mentioned in the policy's personal liability coverage provision.

Claimants further argue the intent of Exclusion 2.f to exclude coverage of their wrongful death claims becomes ambiguous when the policy's severability clause is considered. A severability clause may create an ambiguity when viewed in conjunction with an unambiguous clause in another part of the policy. *Millers Mut. Ins. Ass'n v. Shell Oil Co.*, 959 S.W.2d 864, 868 (Mo.App. E.D.1997).

Claimants contend "courts interpret severability of interest clauses as implying that the exclusion of claims by insureds means only the insured claiming coverage," citing *Shelter Mut. Ins. Co. v. Brooks*, 693 S.W.2d 810 (Mo. banc 1985); *Bituminous Casualty Corp. v. Aetna Life & Casualty Co.*, 599 S.W.2d 516 (Mo.App. E.D.1980); *General Aviation Supply Co. v. Insurance Co. of N. Am.*, 181 F.Supp. 380, 382–84 (E.D.Mo.), *aff'd on other grounds*, 283 F.2d 590 (8th Cir. 1960); *Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Bierman*, 266 Md. 420, 292 A.2d 674 (1972) and cases cited therein. Thus, Claimants urge, because Lloyd, through his conservator, is the only insured seeking coverage, Exclusion 2.f applies only to him and does not apply to their wrongful death claims, which arose out of bodily injury to a different insured, Sherry.

The cases cited by Claimants address the effect of a severability provision on a liability insurance policy's exclusion provision that uses the phrase "the insured." See *Brooks*, 693 S.W.2d at 811 (automobile liability policy); *Bituminous Casualty Corp.*, 599 S.W.2d at 518 (employer's liability policy covering use of motor vehicles); *General Aviation Supply Co.*, 181 F.Supp. at 382 n. 3 (aircraft liability policy); *Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 292 A.2d at 676 (employer's comprehensive liability policy). The Missouri Supreme Court has found the word "insured" may be either singular or plural. *Brooks*, 693 S.W.2d at 812. The phrase "the insured," as the Supreme Court noted,

---

2. The Limits Of Liability provision in the policy's Uninsured Motorist Insurance Endorsement stated in relevant part:

   1. The limit of liability stated in the declarations [a]s applicable to "each person" is the limit of The Travelers' liability for all damages because of bodily injury sustained by one person as a result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the declarations as applicable to "each accident" is the total limit of The Travelers' liability for all damages because of bodily injury sustained by two or more persons as the result of a[ny] one accident.

*Cano*, 656 S.W.2d at 268.

"clearly would encompass all insured under [a] policy" when "insured" is plural, but would encompass only a specific insured when "insured" is singular. *Id.*

This ambiguity does not exist in the term "an insured," which is the term present in the Exclusion 2.f at issue here. In *Brooks,* the Supreme Court described "the articles 'a' and 'an' [as] general in description encompassing any of the class." *Id.* The Supreme Court expressly stated "an insured" or "any insured" are phrases "more properly utilized" when the reference is to "all members of the class" of insureds.[3] *Id.; see also State Farm Mut. Auto. Ins. v. Ballmer,* 899 S.W.2d 523, 526 (Mo. banc 1995) ("as used in the household exclusion [of the automobile liability policy], 'an insured' refers to any person ... falling within the [policy's] definition of 'insured' ").

We have determined that the existence of a severability clause does not limit or make ambiguous an exclusion provision using the term "any insured." *American Family Mut. Ins. Co. v. Copeland–Williams,* 941 S.W.2d 625, 628–30 (Mo.App. E.D.1997). When an insurance policy's exclusion provision contains the phrase "any insured," it unambiguously expresses "an intent to deny coverage to anyone defined as an insured, despite language in the severability clause stating liability coverage 'applies separately to each insured.' " *Millers Mut. Ins. Ass'n,* 959 S.W.2d at 868 (citing *Copeland–Williams, supra,* and *American Family Mut. Ins. Co. v. Moore,* 912 S.W.2d 531 (Mo.App. W.D.1995)).

Exclusion 2.f states it excludes from personal liability coverage "bodily injury to you or *an* insured" (emphasis added). The phrase "an insured" refers to all insureds defined in an insurance policy, just as the phrase "any insured" refers to all insureds defined in the policy. *See Brooks,* 693 S.W.2d at 812. Because "an insured" and "any insured" have the same meaning, we find applicable in this case the Missouri case law holding an insurance policy's exclusion referring to "any insured" does not become ambiguous when considered in conjunction with a severability clause. Therefore, Claimants' wrongful death claims do not fall outside the unambiguous terms of Exclusion 2.f, even though the policy contains a severability clause.

In *Shelter Mut. Ins. Co. v. Haller,* 793 S.W.2d 391 (Mo.App. W.D.1990), the Western District addressed whether a bodily injury exclusion in a homeowner's insurance policy covered wrongful death claims pursued by relatives of a named insured killed by the other named insured, who then committed suicide. The policy contained a bodily injury exclusion that the court construed as unambiguously excluding coverage of bodily injury to the named insureds. *Id.* at 392, 394. Appellants argued that the severability clause limited the exclusion only to the insured claiming coverage. The court noted such a limitation would mean the exclusion was valid only in the absurd situation where a named insured sued himself. *Id.* at 394. The Western District concluded the severability clause:

> cannot operate to limit the exclusion clause ... without completely eviscerating the exclusion clause and contravening logic. Were we to apply [appellants'] argument, we would in effect create an ambiguity where none existed. That we cannot do.... Based upon the policy's language, neither [of the named insureds] could have reasonably expected to collect for bodily injuries to themselves.

*Id.* Thus, the unambiguous bodily injury exclusion was not rendered ambiguous or otherwise limited by the presence of a severability clause. *Id.* That result is consistent with the result reached in this case.

In summary, we conclude the bodily injury exclusion in the homeowner's policy at issue in this case unambiguously excludes personal liability coverage of wrongful death claims arising out of or derived from bodily injury to an insured, regardless of who pursues those claims and regardless of who is seeking

---

**3.** A distinction between "the insured" and "any insured" for purposes of a bodily injury exclusion provision in an automobile liability policy was raised, but not addressed by this Court, in *State Farm Mut. Auto. Ins. Co. v. Andrews,* 789 S.W.2d 144, 146 (Mo.App. E.D.1990). In that opinion we found public policy was violated by application of the policy's bodily injury exclusion to wrongful death claims pursued by permittee insureds' survivors against a named insured. *Id.*

coverage under the policy. We further find that neither the personal liability coverage provision nor the severability clause of that policy renders the bodily injury exclusion ambiguous. Therefore, we conclude Claimants' wrongful death claims, which arose out of bodily injury to an insured, are clearly not encompassed by the homeowner's policy at issue in this case.

Judgment affirmed.

ROBERT G. DOWD, Jr., P.J. and SIMON, J., concur.