393 So.2d 1379 (1981)
ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY
v.
Thad Ira PIGOTT, as Administrator of the Estate of Patrick Pigott, deceased, et al.
79-543.
Supreme Court of Alabama.
February 6, 1981.
*1380 Olin W. Zeanah and William J. Donald, III of Zeanah, Donald & Hust, Tuscaloosa, for appellant.
James G. Lee of Lee, Barrett & Mullins, Tuscaloosa, for appellees.
SHORES, Justice.
This is a declaratory judgment action by Alabama Farm Bureau Mutual Casualty Insurance Company (Farm Bureau) which seeks a determination regarding its rights and obligations concerning Thad Ira Pigott, as administrator of the estate of Patrick Pigott, deceased, under the uninsured motorist and medical payment provisions of certain automobile liability insurance policies issued by that insurance company. The trial judge held that Patrick Pigott, an unborn child at the time of an automobile accident in which his mother was involved, was an insured within the meaning of these policy provisions. From the judgment so holding this appeal is taken.
The issue to be resolved is whether Patrick Pigott, deceased, an unborn child at the time of the accident in which his mother was involved, was at that time, within the meaning of the policies, a relative of the named insured, Thad Ira Pigott, and a resident of the named insured's household.
This case was submitted to the trial court on a stipulation of facts and documentary evidence. The facts are that Tamera ("Tammy") Faye Pigott was insured in an automobile accident on Alabama Highway 69 near Northport, Alabama, on January 3, 1979. She was riding as a passenger in an automobile driven by Brenda Jean Jones, an uninsured motorist. As a result of the accident, Brenda Jones died and Tammy Pigott was rendered comatose.
At the time of the accident, Tammy Pigott was residing with her natural mother, Anita Boyd Pigott, and her adoptive father, Thad Ira Pigott, and was pregnant, of which fact Thad Pigott was unaware. She was then unmarried and had never been married.
On March 8, 1979, Tammy Pigott while still in a comatose state, gave birth to Patrick Pigott, who died one day later. Hospital records show that Patrick Pigott's gestational age at birth was between 28 and 30 weeks. Due to her comatose condition, Tammy Pigott was declared non compos mentis and Thad Ira Pigott was appointed guardian of her estate and administrator of the estate of Patrick Pigott. Suit was brought against Edward Morgan, as administrator of the estate of Brenda Jones, and others, by Thad Ira Pigott, individually, as guardian of the estate of Tammy Pigott, and as administrator of the estate of Patrick Pigott, deceased, alleging, inter alia, *1381 injuries to the unborn child and the resultant death of Patrick.
Four policies of automobile liability insurance issued by Farm Bureau to Thad Ira Pigott, as named insured, on four automobiles owned by him, were in effect on the date of the accident. The provisions of these policies pertinent to this case, identical in each policy, read as follows:
INSURING AGREEMENT IIIUNINSURED MOTORIST
Coverage MDamages for Bodily Injury Caused by Uninsured Automobiles.
The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages except punitive damages (other than for death) from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile....
* * * * * *
(a) Insured. The unqualified word "Insured" means
(1) the First Named Insured as stated in the policy and while residents of the same household, the spouse of any such Named Insured and relative of either....
INSURING AGREEMENT ITHE AUTOMOBILE
* * * * * *
Coverage CMedical Payments.
To pay the reasonable expense of necessary medical, dental, x-ray, eyeglasses, hearing aids, surgical, ambulance, hospital, professional nursing, funeral services and prosthetic devices, all incurred within one year from date of accident....
* * * * * *
DEFINITIONSINSURING AGREEMENTS I AND II
Named Insuredmeans the individual so designated in the declarations and also includes the spouse, if a resident of the same household.
Insuredunder Coverages A, B, C, C-1, and C-2, the unqualified word "insured" includes (1) the named insured, and also includes (2) his relatives, (3) any other person while using the automobile, provided the actual use of the automobile is with the express permission of the named insured, and (4) under Coverages A and B any person or organization legally responsible for the use thereof by an insured as defined under the three subsections above.
Relativemeans a relative of the named insured who is a resident of the same household.
Construing these provisions under the facts as stipulated, the trial court concluded:
[T]he Court having considered same finds that the unborn fetus, Patrick Pigott, was a resident of the same household of Thad Ira Pigott and his spouse at the time of said accident, and that said unborn fetus was, therefore, an insured under the medical pay provisions and uninsured motorist provisions of the policies of insurance issued by Plaintiff Alabama Farm Bureau Mutual Casualty Insurance Company, to Thad Ira Pigott, said policies being identified by agreement in this cause, and it is so ORDERED.
Farm Bureau appealed and points out that the gestational age of 28 to 30 weeks at birth, on March 8, 1979, placed the unborn child at a gestational age of 19 to 21 weeks on January 3, 1979, the date of the accident. Citing Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), which held that viability occurs at the earliest at the 24th week of pregnancy, appellant asserts the unborn child was not viable at the time of the accident. Advancing its argument, appellant contends the unborn child, lacking viability, was only a "potential human life" and "not a person in being at that stage of its existence," Eich v. Town of Gulf Shores, 293 Ala, 95, 300 So.2d 354 (1974), and, consequently, could not have enjoyed the legal status of an insured person under the policies in question on the date of the accident, the event activating coverage.
*1382 Appellees counter with the argument that viability is not the issue, citing cases holding that, under the "relation back" doctrine, an unborn child may inherit property, Barnett v. Pinkston, 238 Ala. 327, 191 So. 371 (1939); share in life insurance proceeds payable to wife and children, Sauerbier v. Union Cent. Life Ins. Co., 39 Ill.App. 620 (1891); and his demise will support an action for wrongful death, Wolfe v. Isbell, 291 Ala. 327, 280 So.2d 758 (1973), regardless of viability. We agree that it is unnecessary to consider questions of viability in order to determine whether Patrick Pigott, deceased, was an insured under the pertinent policy provisions on the date of the accident.
Appellees note that Thad Ira Pigott, as administrator, has an available tort action against the uninsured motorist under the authority of Wolfe, supra, which held that a wrongful death action may be maintained for injuries to a fetus subsequently born alive, but who then dies from the injuries. Appellees add that Thad Ira Pigott, as administrator, would have been financially protected if Brenda Jones, the uninsured motorist, had complied with Alabama's "Motor Vehicle Safety-Responsibility Act" (§ 32-7-1, et seq., Code 1975) by purchasing liability insurance, since damages awarded in a wrongful death action against Brenda Jones would be paid by her liability insurer, had she been insured.
Appellees' argument is that policy considerations underlying our uninsured motorist statute (§ 32-7-23, Code 1975) are to provide the same protection to the injured party which would be available if the uninsured motorist had carried liability insurance.
This interpretation of the doctrine of coextensive coverage and this policy construction of our uninsured motorist statute were rejected in State Farm Automobile Insurance Company v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974). Appellees in that case urged this Court to adopt the rationale of Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla.1971), wherein the Florida Supreme Court stated:
"When uninsured motorist coverage was obtained by Shelby Mullis ... for himself as the named insured, for his spouse and for his or his spouse's relatives who are residents of his household, they were given the same protection in case of bodily injury as if the uninsured motorist had purchased automobile liability insurance in compliance with the Financial Responsibility Law."
In response to that argument, this Court stated that "[w]e, however, cannot divine such an intent from the language of our Alabama statute. If it is deemed desirable to require insurance companies in Alabama to provide coverage to a certain class of persons in all policies under our `Motor Vehicle Responsibility Act,' we think it necessary that the legislature say so specifically."
Appellant, in Reaves, supra, argued that uninsured motorist coverage was required only for the named insured, even though the liability provisions of the policy in question extended coverage to others, including relatives of the named insured who were residents of the same household. In rejecting appellant's argument, this Court said that once an automobile liability policy is issued extending coverage to a certain class of insureds under such a clause, uninsured motorist coverage must be offered to cover the same class of insureds. Thus, the mandated reciprocal extent of uninsured motorist coverage is determined by the extent of liability coverage for which the parties have contracted in the same policy, once minimal statutory liability coverage is provided, and not by the extent of liability coverage which would have been provided in the policy of the third-party tort-feasor, if that tort-feasor had liability insurance.
It was also held in Reaves that Alabama's Uninsured Motorist Statute, Tit. 36, § 74(62a), Code 1940 (now § 32-7-23, Code 1975), mandated uninsured motorist coverage for "persons insured thereunder," that is, persons insured under the liability provisions of the policy. Thus, a class of insureds named in the provisions of an automobile liability policy in Alabama are provided *1383 uninsured motorist coverage regardless of whether that class is specifically named in the policy providing uninsured motorist coverage.
Therefore, the Court must look to the terms for which the parties contracted in order to ascertain the extent of coverage under uninsured motorist provisions. The specific inquiry in this case hinges on the definition of an insured under the pertinent policy provisions, as a relative of the named insured who is a resident of the same household. Appellee contends that the phrase "resident of the same household" is ambiguous, Crossett v. St. Louis Fire and Marine Insurance Co., 289 Ala. 598, 269 So.2d 869 (1972), and asks the Court to apply the well-settled rule in Alabama that where terms of an insurance policy are ambiguous, they are to be construed in favor of the insured. Mutual Life Insurance Co. of New York v. Barrett, 215 Ala. 142, 110 So. 275 (1926). We agree and adopt the construction given that phrase by the South Carolina Supreme Court in Buddin v. Nationwide Mutual Insurance Co., 250 S.C. 332, 157 S.E.2d 633 (1967):
"The insurance policy here included Horace E. Buddin as the named insured and as an additional insured `any relative resident of the same household.' Any person qualifying as a resident of the same household of the insured is an additional insured under the policy. The policy here is one that extends coverage and includes as an insured any relative resident of the same household and is not a clause excluding from coverage a relative resident of the same household. The courts have uniformly held that where the clause is one of inclusion it should be broadly construed for the benefit of the insured while in exclusion cases the same clause is given a more restrictive interpretation.... This is necessary because in both situations the courts favor an interpretation in favor of coverage. The touchstone is that the phrase `resident of the same household' has no absolute or precise meaning, and, if doubt exists as to the extent or fact of coverage, the language used in most policies will be understood in its most inclusive sense."
157 S.E.2d at 635.
Appellees also urge as persuasive authority the decision of the Kentucky Court of Appeals in Orange v. State Farm Mutual Automobile Insurance Co., 443 S.W.2d 650 (Ky.1969), holding that an unborn child was a "member of the family of the insured residing in the same household as the insured" for purposes of a "family" or "household" exclusion clause of an automobile liability insurance policy. The Kentucky court based its decision on the biological relationship of the fetus to the insured and said it believed no useful purpose would be served by analyzing the various ways in which the words "family" and "household" had been defined and construed in the cases argued by the insured. We agree.
We agree with the trial court that the unborn child, subsequently born alive and named Patrick Pigott, was within the class of insureds under the uninsured motorist provisions of the four policies of automobile liability insurance issued by Farm Bureau to Thad Ira Pigott and, therefore, Thad Ira Pigott, as administrator of Patrick Pigott's estate, does have a claim against Farm Bureau arising out of the accident, under these provisions.
Farm Bureau also asks for a declaration of the status of Thad Ira Pigott, as administrator, under the medical payments provisions of the four policies. The Alabama Motor Vehicle Safety-Responsibility Act mandates automobile liability and uninsured motorist coverage only. It does not require medical payments coverage. Billups v. Alabama Farm Bureau Mutual Casualty Insurance Co., 352 So.2d 1097 (Ala. 1977). Therefore, the question is one of contract construction to which the analyses and conclusions relating to the uninsured motorist provision, supra, equally apply. The unborn child was an insured under the medical payments provisions on the date of accident, and consequently, Thad Ira Pigott, as administrator of Patrick Pigott's estate, has a cause of action arising out of the accident for benefits under those provisions.
*1384 The judgment appealed from is affirmed.
AFFIRMED.
MADDOX, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs specially.
TORBERT, C. J., and FAULKNER, ALMON, and EMBRY, JJ., dissent.
JONES, Justice (concurring specially):
I concur with the opinion of the Court. I reiterate several points for emphasis:
1) The reason "viability" is not an issue lies in the fact that the presumption of viability never comes into play because of the live birth of the child. It is incongruous on its face to contend that the presumption against viability at the time of injury prevails when that presumption has been conclusively rebutted by the fact that the child was born alive.
2) As the opinion correctly points out, there are two potential sources of coverage for uninsured motorist protection: a) By the terms of the policy, and b) by the mandate of the Uninsured Motorist Statute. At the very least, all persons prescribed by the Statute are covered as insureds for uninsured motorist protection whether or not such persons are included within the policy definition of insured. By the same token, the policy may include additional insureds and broader coverage than that mandated by the Statute. The important point, here, is that the coverage provisions of the policy of insurance, both as to who is insured and for what benefits, are identical to that mandated by the Statute. Thus, this Court's interpretation of the definition of "insured" contained in the uninsured motorist provisions of the policy (resident of the named insured's household) is dispositive of the issue presented.
3) If there is a point of difference between my approach to this issue and that of the majority opinion, it lies in my conclusion that the term "resident of the same household," in the context here presented, is not ambiguous. To be sure, whether or not it is ambiguous is of no consequence in the result to be obtained in the instant case; and I readily concede that this same term may be ambiguous in other contexts. Here, however, the plain wording of this definition, when applied to the simple, undisputed facts of this case, leaves room for but one conclusion: This child, at all times material to the coverage issue, was a member of some household, and this was the household of his mother, which, in turn, was the household of the named insured. This abstract fact is not altered by the circumstance that the child existed as an unborn child in its mother's womb at the time of injury, or by the further circumstance that he died on the second day following birth without having arrived "home" alive. The law that gives this child a cause of action for his injury had he lived and thus supports a wrongful death action) is the same law, operating with the same force of reason, that says he was a member of the named insured's household for purposes of uninsured motorist coverage as defined by the policy of insurance. To say otherwise would be to reach the nonsensical conclusion that this child existed as a person, suffered death wrongfully at the hands of another; but, because of the untimely circumstances of his injury and death, he was never a member of any earthly household.
EMBRY, Justice (dissenting):
I cannot agree that the phrase "resident of the household" is ambiguous. Appellant acknowledges the rule of construction regarding ambiguous language in contracts but asserts the equally applicable and well-settled principles enumerated by this court in Home Insurance Co. v. Pettit, 225 Ala. 487, 143 So. 839 (1932), wherein it was established that, in construing an insurance policy:
... the first important canon of construction is to ascertain, if possible, the real intention of the contracting parties. To arrive at that intention, the circumstances under which the contract was made, the object and purposes the parties had in mind, and words employed to express their meaning, should be given consideration.

*1385 Words employed in the contract should be given their plain, ordinary, everyday meaning, unless it appears from the instrument itself, or from something in the circumstances of the case, to indicate to the judicial mind that words were used in some technical sense.
The word "household" has a well-known legal meaning in Alabama law. The term means or contemplates a number of persons dwelling under the same roof and composing a family. The words "household" and "family" are often used interchangeably. Pettit, supra. "Family" includes such persons as habitually reside under one roof and form one domestic circle. Blow v. State Farm Mutual Automobile Insurance Co., 284 Ala. 687, 228 So.2d 4 (1969).
A determination of whether a person is a "resident or member of the household" within the meaning of a liability policy is dependent upon several factors: (1) living under the same roof; (2) in a close, intimate and informal relationship; (3) the intended duration is likely to be substantial; (4) the duration of the relationship is consistent with the informality of that relationship; and (5) from all of which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon. Lecus v. American Mutual Insurance Co. of Boston, 81 Wis.2d 183, 260 N.W.2d 241 (1977); Pamperin v. Milwaukee Mutual Insurance Co., 55 Wis.2d 27, 197 N.W.2d 783 (1972).
Given these guidelines, I do not believe the parties contracting for the insurance policies which are here to be construed would have contemplated an unviable fetus to be a "relative of the named insured who is a resident of the same household," within the plain, ordinary and everyday meaning of that language. This court has stated that the rule that an insurance policy should be liberally construed in favor of the insured, does not permit a strange or unusual construction of policy language in its favor. Commercial Standard Insurance Co. v. New Amsterdam Casualty Co., 272 Ala. 357, 131 So.2d 182 (1961). To stretch the phrase "resident of the same household," so that it encompasses an unviable fetus would be an exercise in verbal gymnastics and would torture logic, unwarranted under the circumstances.
Appellees urge as persuasive authority the decision of the Kentucky Court of Appeals in Orange v. State Farm Mutual Automobile Insurance Co., 443 S.W.2d 650 (Ky.1969), holding that an unviable fetus was a "member of the family of the insured residing in the same household as the insured" for purposes of a "family" or "household" exclusion clause of an automobile liability insurance policy. The Kentucky court based its decision solely on the biological relationship of the fetus to the insured and said it believed no useful purpose would be served by analyzing the various ways in which the words "family" and "household" had been defined and construed in the cases urged by the insured. I cannot adopt that view. To refuse to ascertain the accepted meaning of the terms of the policies is to disregard the intention of the contracting parties. While blood relationship can certainly be a factor in determining if one is a member of a "family" or "household," I think the phrase "resident of the same household," given its ordinary, everyday meaning, connotes a relationship involving some degree of social interaction in which a fetus could not engage.
Appellees also cite Peterson v. Nationwide Mutual Insurance Co., 175 Ohio St. 551, 197 N.E.2d 194 (1964), for the proposition that a fetus can be within the class of insureds under an automobile liability policy. The subject of scrutiny in Peterson was an automobile liability policy containing a family compensation clause which extended coverage to any "person" injured in an accident in the described automobile, with the term "person" further undefined in the policy. Peterson is not relevant to the facts of this case because of the difference in the policy language construed by the Ohio court.
Based on the authorities and reasons discussed, I would hold that the unviable fetus, subsequently born alive and named Patrick Pigott, was not within the class of insureds *1386 under the uninsured motorist provisions of the four policies of automobile liability insurance issued by Farm Bureau to Thad Ira Pigott and, thereafter, Thad Ira Pigott, as administrator of Patrick Pigott's estate, does not have a claim against Farm Bureau arising out of the accident, under these provisions.
Farm Bureau also asks for a declaration of the status of Thad Ira Pigott, as administrator, under the medical payments provisions of the four policies. The Alabama Motor Vehicle Safety-Responsibility Act mandates automobile liability and uninsured motorist coverage only. It does not require medical payments coverage. Billups v. Alabama Farm Bureau Mutual Casualty Insurance Co., 352 So.2d 1097 (Ala. 1977). Therefore, the question is one of contract construction to which my analyses and conclusions relating to the uninsured motorist provisions, supra, equally apply. The fetus was not an insured under the medical payments provisions on the date of accident and, consequently, Thad Ira Pigott, as administrator of Patrick Pigott's estate, has no cause of action arising out of the accident for benefits under those provisions.
I would reverse the case and enter judgment here in conformity with my views expressed in this dissent.
TORBERT, C. J., and FAULKNER and ALMON, JJ., concur.