**FIRE INSURANCE EXCHANGE, Respondent,**

v.

**Caleb HORNER, Appellant,**

**Gail Mansfield and Darrell Mansfield, Appellants.**

**Nos. WD 73902, WD 73903.**

Missouri Court of Appeals,
Western District.

March 13, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2012.

Application for Transfer
Denied July 3, 2012.

Elle J. Sullivant, for Appellant Horner.

Jonathan M. Soper, for Appellants Mansfield.

Christopher J. Carpenter, for Respondent.

Before Division Three: JAMES M. SMART, JR., Presiding Judge, VICTOR C. HOWARD, Judge and JAMES E. WELSH, Judge.

VICTOR C. HOWARD, Judge.

Gail and Darrell Mansfield ("the Mansfields") and Caleb Horner appeal the trial court's grant of summary judgment in favor of Fire Insurance Exchange ("FIE") on its petition for declaratory judgment. On appeal, Horner and the Mansfields contend that the trial court erred in granting FIE's motion for summary judgment because a household resident exclusion clause in Horner's homeowners insurance policy did not unambiguously exclude coverage for injuries sustained by Horner's unborn child. The judgment of the trial court is affirmed.

**Factual and Procedural Background**

Appellants Gail and Darrell Mansfield are the parents of Misty Mansfield and the grandparents of Misty's daughter, Syd-

ney.[1]  Caleb Horner was Misty's boyfriend and the father of Sydney.  Misty went into labor in early December of 2006, and Sydney was stillborn on December 6, 2006.  Misty died on January 9, 2007.

On December 4, 2009, the Mansfields filed a petition for damages against Caleb Horner, among others, for the wrongful deaths of Misty and Sydney.  In the petition, the Mansfields alleged that Horner demanded that Misty give birth to Sydney at home with no healthcare professionals present.  The Mansfields alleged that Horner provided inadequate care during the birth, thereby causing Sydney to be stillborn.  The Mansfields further alleged that Horner provided inadequate care to Misty after the birth, thereby causing Misty's death.

On January 22, 2010, FIE filed a petition for declaratory judgment in which it sought a judgment declaring that it had no duty to defend or indemnify Horner in the underlying wrongful death lawsuit.  FIE had issued a homeowners insurance policy to Horner for the period of October 8, 2006 to October 8, 2007.  Pursuant to the insurance policy, FIE would pay "those damages which an insured becomes legally obligated to pay because of bodily injury or property damage resulting from an occurrence to which this coverage applies."  However, the policy contained a "household exclusion," which provided that FIE would not cover "[b]odily injury to any resident of the residence premises except a residence employee who is not covered by Workers' Compensation or Employers' Liability Coverage."  FIE alleged that Misty and Sydney were residents of the residence premises as defined by the policy.  Therefore, because the Mansfields' underlying claims were based upon bodily injury

to residents of the residence premises, the exclusion applied and FIE had no duty to defend or indemnify Horner.

FIE filed a motion for summary judgment in which it alleged that it was entitled to judgment as a matter of law on its petition for declaratory judgment in that the policy did not provide coverage for any liability on the part of Horner due to the household exclusion.  The Mansfields filed a motion for summary judgment in which they contended that the household exclusion was ambiguous because reasonable people could disagree on whether an unborn child could be considered a resident of a household.  The Mansfields argued that, where the exclusion was ambiguous, Missouri law required that it be construed in favor of providing coverage.

After considering the motions and arguments of the parties, the trial court granted FIE's motion for summary judgment for the reasons set forth in FIE's motion.  The court therefore entered judgment in favor of FIE on its petition for declaratory judgment.  This appeal by Horner and the Mansfields followed.

### Standard of Review

An appellate court's review of an appeal from summary judgment "is essentially *de novo.*"  *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).  "Summary judgment is appropriate where the moving party establishes a right to judgment as a matter of law and that no genuine issue of material fact exists."  *United Mo. Bank, N.A. v. City of Grandview,* 105 S.W.3d 890, 895 (Mo.App. W.D.2003).  Whether or not summary judgment should be granted is an issue of law, and "an

---

1.  For the sake of clarity, Misty and Sydney Mansfield will be referred to by their first names.

appellate court need not defer to the trial court's order granting summary judgment." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. We review the record in the light most favorable to the party against whom summary judgment was entered. *Id.* "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record." *Id.* (citations omitted).

## Discussion

■ In their sole point on appeal, Horner and the Mansfields contend that the trial court erred in granting FIE's motion for summary judgment because the household resident exclusion did not exclude coverage for injuries sustained by Sydney.[2] They claim that the exclusion is ambiguous and therefore must be read in favor of providing coverage for Sydney.

■ When interpreting the language of an insurance policy, a court must give the language of the policy its plain meaning. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. banc 1999). "The plain or ordinary meaning is the meaning that the average layperson would understand." *Id.* When a policy provision is clear and unambiguous, a court need not apply rules of construction. *Id.* A court may not distort the language of an unambiguous policy in order to create an ambiguity. *Id.* "An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of a policy's language" and the language is reasonably open to different constructions. *Am. Motorists Ins. Co. v. Moore*, 970 S.W.2d 876, 878 (Mo.App. E.D. 1998). An ambiguous insurance policy

provision will be construed against the insurer. *Id.*

The household exclusion in Horner's policy with FIE provides that FIE will not cover "[b]odily injury to any resident of the residence premises." The policy defines the "residence premises" as Horner's house and property, but the policy does not define the term "resident." Horner and the Mansfields contend that the term "resident" is ambiguous in the context of this case because a layperson would ordinarily interpret the term to include only living members of a household. Therefore, a layperson would not interpret the term "resident" to include a child, such as Sydney, who had not been born yet.

Although there are no Missouri cases on point, Horner and the Mansfields cite several cases from other states which address the question of whether the term "resident" includes an unborn child. *See Ala. Farm Bureau Mut. Cas. Ins. Co. v. Pigott*, 393 So.2d 1379 (Ala.1981); *Craig v. IMT Ins. Co.*, 407 N.W.2d 584 (Iowa 1987); *Sobeck by Sobeck v. Centennial Ins. Co.*, 234 N.J.Super. 445, 560 A.2d 1309 (N.J.Super. Ct. Law Div.1988). In *Pigott*, the court addressed the issue of whether an unborn child was a "resident" of his mother's household within the meaning of a provision in the mother's automobile insurance policy. 393 So.2d at 1380. If the unborn child was a resident of his mother's household, he would be covered by the policy as an insured. *Id.* at 1381. The court found that the term "resident" was ambiguous and that, therefore, the policy should be construed as including the unborn child as an insured. *Id.* at 1383.

The courts in *Craig* and *Sobeck* came to similar conclusions. In *Craig*, the court found that it was reasonable for the in-

---

2. Horner and the Mansfields address the trial court's judgment only as to coverage for Syd-

ney's injuries and make no argument regarding coverage for Misty's injuries.

sured parents to believe that the term "person" in their insurance policy would encompass their unborn child. *See* 407 N.W.2d at 587. Therefore, the court determined that the parents' unborn child was a covered "person" and resided in the parents' household. *Id.* at 587–88. In *Sobeck*, the insurance policy in question provided coverage for a relative of the named insured who was a resident of the same household as the named insured. 560 A.2d at 1312–13. The court determined that an unborn child occupied the same household as her mother and, therefore, was an eligible insured person under the policy. *Id.* at 1314.

Horner and the Mansfields contend that this court, like the courts in the aforementioned cases, should find that the term "resident" is ambiguous in the context of this case and construe the policy as providing coverage. However, while those courts may have found the term to be ambiguous,[3] each court came to the same conclusion—that the unborn child was a resident of his or her mother's household.

Furthermore, the facts of a 2003 case from Tennessee are more comparable to the facts of this case. *See Hollis v. Doerflinger*, 137 S.W.3d 625 (Tenn.Ct.App. 2003). In *Hollis*, a pregnant woman caused a car accident, and as a result of the accident, the mother and her unborn child both died. *Id.* at 626. At the time of the accident, the mother and her husband were covered by an automobile insurance policy which provided coverage for bodily injury for which they became legally responsible. *Id.* at 627. However, the policy contained a provision that excluded coverage for bodily injury to anyone related to the named insured who was a resident of the same household. *Id.* Because the mother caused the accident, her unborn child would not be covered if the child was considered to be a resident of her household. *Id.*

The father of the unborn child filed a wrongful death action on behalf of the child and asked the court to issue a declaratory judgment that the claim was covered by the insurance policy. *Id.* The father argued that the term "resident" was ambiguous because it was unclear whether an unborn child would qualify as a resident of its mother's household. *Id.* The insurance company contended that the policy was not ambiguous because the only reasonable interpretation was that the child resided with its mother and was therefore a resident of the same household. *Id.* The court agreed with the insurance company and found that, in the context of the case, there was no ambiguity—it was clear that the unborn child resided wherever its mother resided. *Id.* at 629. Therefore, the exclusion applied and the insurance company was not required to provide coverage for bodily injury to the unborn child. *Id.*

The facts of this case are similar to those in *Hollis*, and we similarly find that the term "resident" is not ambiguous. In the context of this case, the interpretation of the provision that Horner and the Mansfields assert is not reasonable. It would be unreasonable for Horner to believe that Misty, the mother of the unborn child, would fall within the exclusion, yet

---

**3.** The court in *Pigott* made a specific finding that the term "resident" was ambiguous. 393 So.2d at 1383. However, the court in *Sobeck* appears to have found the term to be unambiguous. *See* 560 A.2d at 1314. The court in *Sobeck* observed that the concurring opinion in *Pigott* "made the most sensible response" when it found that the plain wording of the phrase "resident of the same household" " 'leaves room for one conclusion: this [unborn] child ... was a member of some household, and this was the household of his mother, which, in turn, was the household of the named insured.' " *Sobeck*, 560 A.2d at 1314 (quoting *Pigott*, 393 So.2d at 1384 (Jones, J., concurring)).

the unborn child in Misty's womb would be covered simply because it had not yet been born. Furthermore, the Mansfields' underlying lawsuit is premised on the fact that Sydney was a person capable of suffering bodily injury, or wrongful death. If Sydney was a person capable of sustaining bodily injury, then she was capable of having a residence. *See Craig*, 407 N.W.2d at 587. We find that the term "resident" as used in the exclusion provision is unambiguous in that there can only be one reasonable interpretation—Sydney, who was in her mother's womb at the time of her injuries, resided wherever her mother resided. Therefore, Sydney resided with Misty in Horner's household. Because the policy excludes coverage for bodily injury to residents of Horner's household, FIE has no duty to defend or indemnify Horner in the underlying wrongful death action.

The judgment of the trial court is affirmed.

All concur.